IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-00644-CMA-GPG

SLATER PARK LAND AND LIVESTOCK, LLC, a Colorado Limited Liability Company,

    Plaintiff,

v.

U.S. ARMY CORPS OF ENGINEERS,
SUSAN BACHINI NALL, in her official capacity as the Chief of the Colorado West Section Regulatory Division of the Sacramento District of the United States Army Corps of Engineers,

    Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

---

This matter is before the Court on Defendants U.S. Army Corps of Engineers and Susan Bachini Nall's Motion to Dismiss. (Doc. # 14.) Based on the following reasons, the Court grants Defendants' Motion.

### I.    BACKGROUND

In 2012, Plaintiff reconstructed an 1800's era earthen dam across Slater Creek—a small stream that runs throughout Plaintiff's property in Routt County, Colorado. (Doc. # 14 at 5; Doc. # 17 at 3.) The original dam was built to create a pond to facilitate irrigation and stock watering, but it was washed out by a severe weather event in the

1930's. (Doc. # 1 at 10, ¶ 45.) In 2017, Defendants received a report of Plaintiff's dam construction on Slater Creek and opened an investigation.[1] (Doc. # 14 at 5.)

Defendants' investigation concluded that Plaintiff discharged fill material into Slater Creek and the surrounding protected wetlands during the construction of the on-channel pond. (Doc. # 17 at 6.) On August 17, 2018, Defendants issued a letter notifying Plaintiff that the dam was constructed in violation of § 404 of the Clean Water Act ("CWA"). (Doc. # 14 at 6; Doc. # 1-2 at 1.) Plaintiff challenges Defendants' notice of violation ("NOV") in the instant suit.

After indicating that Plaintiff's dam was unauthorized, the NOV set forth several options which Plaintiff could implement to remedy the situation without incurring disciplinary action. (Doc. # 17 at 6.) These options included: "restoring the impacted waters to pre-disturbance conditions, partially restoring impacted waters, and/or obtaining an after-the-fact permit for all or a portion of the work." (Doc. # 1-2 at 1.) Then, the NOV requested that Plaintiff choose one of the options and notify Defendants of its "remedy proposal" by August 31, 2018. (*Id.* at 1–2.) The letter further stated that failure to respond to the request for a remedy proposal "may result in elevated enforcement actions" such as "possible referral to the EPA, fines, and/or penalties." (*Id*. at 2.)

Plaintiff contends that the construction of the dam is exempt from the CWA pursuant to the CWA's agricultural exemption. (Doc. # 17 at 3.) Thus, Plaintiff did not submit a remedy proposal to Defendants. (Doc. # 14 at 7.) Instead, on March 7, 2019,

---

[1] Defendants are authorized to investigate possible violations of the CWA pursuant to 33 C.F.R. § 326.3(b). (Doc. # 14 at 5.)

Plaintiff filed this action seeking judicial review of the NOV. (Doc. # 1.) Plaintiff alleges that the NOV interferes with its use and enjoyment of its land. (*Id*. at 3, ¶ 6.) Plaintiff seeks two forms of relief. First, Plaintiff seeks injunctive relief against the enforcement of the NOV. (*Id.* at 4, ¶ 9.) Second, Plaintiff seeks a declaration that: (1) the reconstruction of the dam is exempt from the CWA; and (2) Plaintiff's due process rights were violated by Defendants' issuance of the NOV. (Doc. # 17 at 4.)

Defendants filed the instant Motion to Dismiss on May 31, 2019. (Doc. # 14.) Defendants assert that the Court lacks jurisdiction because the NOV is not a final agency action. (*Id.* at 1–2.) Plaintiff filed a Response on June 21, 2019 (Doc. # 17), and Defendants filed a Reply on July 5, 2019 (Doc. # 18).

## II. GOVERNING LAW

### A. § 704 OF THE APA AND THE REQUIREMENT OF FINAL AGENCY ACTION

The APA authorizes judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." *Kansas, ex rel. Schmidt v. Zinke*, 861 F.3d 1024, 1028 (10th Cir. 2017); 5 U.S.C. § 704. There is no statute authorizing judicial review in this case; therefore, this Court may only review Defendants' action if it constitutes "final agency action." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990).

Pursuant to the Supreme Court's ruling in *Bennett v. Spear*, "two conditions must be satisfied for agency action to be 'final.'" 520 U.S. 154, 177 (1997). First, the action must "mark the consummation of the decisionmaking process." *Id.* at 177–78. Second,

the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow." *Id.* at 178.

## B.     DISMISSAL UNDER RULE 12(b)

Defendants filed this Motion to Dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. (Doc. # 14.) However, the presence of final agency action is not a jurisdictional issue.[2] *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) (citing *Trudeau v. FTC*, 384 F. Supp. 2d 281, 294 n.13 (D.D.C. 2005), *aff'd*, 456 F.3d 178 (D.C. Cir. 2006)). This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, whereas the APA's requirements are a part of Plaintiff's cause of action. *Oryszak v. Sullivan*, 576 F.3d 522, 524–25 (D.C. Cir. 2009). Therefore, this Motion to Dismiss would have been more appropriately filed under Rule 12(b)(6) for failure to state a claim.

Nevertheless, courts are "required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion . . . when resolution of the jurisdictional question is

---

[2] The Court notes that there is some disagreement among Circuit courts, and indeed, even within the Tenth Circuit, as to whether this is a jurisdictional inquiry. *Compare Osage Producers Ass'n v. Jewell*, 191 F. Supp. 3d 1243, 1255 (N.D. Okla. 2016) ("In the Tenth Circuit, the APA's limitation to 'final agency action' is considered a jurisdictional requirement. . . . Although several Supreme Court cases cast doubt on this jurisdictional labeling."), *with Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1222 (D.N.M. 2014) ("The APA does not, through § 702, create an independent basis of subject-matter jurisdiction; it allows for judicial review of final agency action only if there is also an independent basis for subject-matter jurisdiction") (citations omitted) (both listing cases). This Court is persuaded by the D.C. Circuit's most recent opinion regarding this question because the Tenth Circuit Court of Appeals has remained silent as to this specific issue and the D.C. Circuit is a leading authority on Administrative Law questions. The Court further notes that the outcome in this case is the same regardless of whether the Court employs a 12(b)(1) or 12(b)(6) approach because facial challenges to jurisdiction and motions to dismiss for failure to state a claim are both analyzed by taking all the facts alleged in the complaint as true.

intertwined with the merits of the case." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Facial challenges to jurisdiction and motions to dismiss for failure to state a claim are analyzed similarly because both consider all the facts alleged in the complaint as true. *Id.* at 1002; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the Court analyzes Defendants' claim pursuant to Rule 12(b)(6).

The Court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

The scope of the allegations may not be "so general that they encompass a wide swath of conduct, much of it innocent" or else the plaintiff has "'not nudged [his] claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III. ANALYSIS

A. **DEFENDANTS' ACTION WAS NOT FINAL**

  1. The NOV Was a Pre-Enforcement Action

33 C.F.R. § 326.3 treats NOVs as a distinct type of agency action. An NOV is a pre-enforcement action, which merely notifies the recipient that they are in violation of a pre-existing statutory requirement. An order, on the other hand, commands the party in violation to take a specific course of action in order to correct such a violation. *Compare* § 326.3(c)(2) ("[o]nce the district engineer has determined that a violation exists . . . the district engineer should . . . notify the responsible parties of the violation"), *with* § 326.3(d)(2) ("[a]n order requiring initial corrective measures that resolve the violation may also be issued by the district engineer in situations where the acceptance or processing of an after-the-fact permit application is prohibited or considered not appropriate . . . .").

Plaintiff asserts that Defendants attempted to "disguise the NOV as an informal communication of information," when it actually represented a "legally binding, mandatory command that, if disobeyed, would subject [Plaintiff] to significant liability." (Doc. # 17 at 17.) By making this assertion, Plaintiff essentially alleges that Defendants' NOV is a compliance order, which would be reviewable under the APA. *Sackett v. EPA*, 566 U.S. 120 (2012). [3] Unlike compliance orders, however, notices of violation cannot

---

[3] In their briefing, both Defendants and Plaintiff discuss the recent Supreme Court cases of *Sackett v. EPA*, 566 U.S. 120 (2012) and *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 136 S. Ct. 1807 (2016), at length. "These cases are, it turns out, more instructive by distinction than by analogy." *Folsom*, 2018 WL 2049839 at *4 (comparing and contrasting both *Hawkes* and *Sackett* to a proposed compliance order issued by the EPA upon determination of a

be legally enforced. Therefore, notices of violation are distinct from compliance orders in terms of reviewability. *See* 33 U.S.C. § 1319(a)(1), (b), and (g) (distinguishing NOVs from enforcement actions such as administrative compliance orders or penalty proceedings).

NOVs under the CWA ("CWA-NOV") are very similar to "notice[s] of violation" issued by the EPA pursuant to § 7413(a) of the Clean Air Act ("CAA-NOV"). 42 U.S.C. § 7413(a); *see also Folsom v. United States Army Corps of Eng'r Neb. Dist.*, No. 4:17-CV-3143, 2018 WL 2049839, at *6 (D. Neb. Apr. 23, 2018) (noting the similarities between CAA-NOVs and a proposed compliance order issued by the EPA upon violation of the CWA). In CAA-NOVs, the EPA provides a "threshold allegation" of potential violations. *Luminant Generation Co., LLC v. EPA*, 757 F.3d 439, 441–42 (5th Cir. 2014). For instance, in *Luminant*, the Fifth Circuit found that CAA-NOVs are not final under § 704 because

> issuing a notice does not commit the EPA to any particular course of action. The statute makes clear the intermediate, inconclusive nature of issuing a notice. After giving notice and waiting 30 days, the EPA *may* issue an order, issue an administrative penalty after a formal

---

violation of the CWA). Both cases asked the question of whether agency action concerning the enforcement of the CWA could be considered final, and thus judicially reviewable under the APA. *Hawkes* considered the finality of a decision made by the Army Corps of Engineers pursuant to a regulatory procedure which allows landowners to obtain a jurisdictional determination about whether a particular property contains "waters of the United States." 136 S. Ct. at 1812. *Sackett* considered the finality of an "administrative compliance order" that the EPA issued under § 309 of the CWA. 566 U.S. at 122. Both cases concluded the agency action in question to be reviewable. In both cases, however, "the agency's order was *itself* the source of legal obligations, 'modifying the applicable legal landscape' by creating new obligations from which legal consequences flowed." *Folsom*, 2018 WL 2049839 at *6 (citing *Zinke*, 861 F.3d at 1034). Because Defendants have not imposed legal obligations on Plaintiff beyond those already imposed by the CWA, the reviewability found in *Hawkes* and *Sackett* is not applicable to the instant suit.

administrative hearing, or bring a civil action. Alternatively, the EPA could choose to withdraw or amend the notice, or take no further action.

*Id.* at 442.

Like CAA-NOVs, the CWA-NOV at issue does not commit the issuing agency – i.e., the Army Corps of Engineers – to a particular course of action. The CWA-NOV informs Plaintiff that Defendants "may" refer the matter to the EPA, issue fines, or issue penalties. Thus, Defendants may also choose *not* to pursue the violation further. Like CAA-NOVs, the NOV in this case reflects only the "first step in a potential enforcement process," and does not end Defendants' decisionmaking. *Royster-Clark Agribusiness, Inc. v. Johnson*, 391 F. Supp. 2d 21, 27 (D.D.C. 2005).

2. <u>The NOV Does Not Determine Rights and Obligations from Which Legal Consequences May Flow</u>

Defendants note that, "the NOV does not meet the second *Bennett* prong because it lacks independent legal effect." (Doc. # 14 at 9.) The Court agrees.

Defendants' NOV does not change the legal status of Plaintiff's activities under the CWA. Rather, the NOV merely indicates a violation of the CWA itself. Thus, any legal obligations that may arise flow from the CWA, not the NOV. *See, e.g., Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732 (D.C. Cir. 2003) (finding that an investigative report recommending voluntary corrective action did not cause legal consequences because "the request for voluntary compliance clearly ha[d] no legally binding effect," and "the agency ha[d] not yet made any

8

determination or issued any order imposing any obligation . . . , denying any right . . ., or fixing any legal relationship" (citations omitted)).

Furthermore, Plaintiff incorrectly asserts that "if enforcement of the NOV is pursued, Slater Park could receive more severe sanctions or penalties for the alleged CWA violation." (Doc. # 17 at 18.) Plaintiff cites *Leslie Salt Co. v. United States*, 789 F. Supp. 1030, 1032–33 (N.D. Cal. 1991) for the proposition that "receipt of an NOV supports the conclusion that a violation was committed with the requisite *mens rea*." (*Id*.) However, *Leslie Salt Co.* refers only to the consequences that a noticee may incur when ignoring a cease and desist order. 789 F. Supp. at 1032–33. Although "violating a compliance order may result in double penalties (for violating the Act and for violating the order), no authority suggests that a court may assess double penalties for 'violating' a notice." *Luminant*, 757 F.3d at 442. Thus, even if the Army Corps of Engineers or the EPA pursue further enforcement action, the Defendants' NOV does not impose additional obligations from which legal consequences may flow.

The similarity between CAA-NOVs and CWA-NOVs shows that legal consequences do not flow from Defendants' actions. Like the NOV at issue, CAA-NOVs do not create rights and obligations or impose legal consequences, because

> a notice does not itself determine [the noticee]'s rights or obligations, and no legal consequences flow from the issuance of the notice. The [Act] and the [state implementation plan], not the notices, set forth [the noticee]'s rights and obligations. . . . [I]f the [agency] issued notice and then took no further action, the [noticee] would have no new legal obligation imposed on it and would have lost no right it otherwise enjoyed.

*Luminant*, 757 F.3d at 442. Similarly, "even if an agency gives notice . . . it need not seek a [compliance] order." *Id.* at 443. Therefore, a "notice of violation does not . . .

9

create any legal obligation, alter any rights, or result in any legal consequences . . . ." *Id.* at 444.

B. **PLAINTIFF'S CONSTITUTIONAL CLAIMS**

Plaintiff also alleges that Defendants violated Plaintiff's constitutional right to procedural due process under the Fifth Amendment. (Doc. # 1 at 19.) Plaintiff alleges that Defendants "fail[ed] to provide [Plaintiff] with fair notice of what the law requires in terms of qualifying for the farm and stock pond exemption" and failed "to give [Plaintiff] a hearing either before or after [Defendants] determined that [Plaintiff] had violated the CWA." (Doc. # 17 at 11.) Because this claim is constitutional in nature, Plaintiff asserts that "federal court jurisdiction exists separately and independently of the APA . . . by virtue of an alleged violation of a federal constitutional right or other judicially enforceable right." (*Id.*) (citing Doe v. U.S. Civil Serv. Comm'n, 483 F. Supp. 539 (S.D.N.Y. 1980)). Defendants argue in response that even constitutional claims cannot be evaluated outside the procedural framework of the APA. (Doc. # 18 at 2.)

Constitutional claims cannot be adjudicated under the APA if the challenged agency action was not final. *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1274 n.6 (D.C. Cir. 2018). There is "no decision of [the D.C. Circuit], and no decision of any other circuit court, holding that the presence of constitutional claims eases the Supreme Court's two-part Bennett test for final agency action when the claim originates from the APA." *Id.*; *see also Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994) (holding that the district court did not have subject-matter jurisdiction to hear a pre-enforcement due process challenge); *LabMD, Inc. v. F.T.C.*, 776 F.3d 1275, 1280 (11th

10

Cir. 2015) (concluding that the plaintiff's "constitutional claims should be heard only upon completion of the agency proceedings").

Plaintiff brings this suit pursuant to the APA, 5 U.S.C. § 551. (Doc. # 1 at 1.) Because the suit arises under the APA, Plaintiff must prove final agency action before this Court reviews its claims. The challenged NOV was not final agency action; therefore, Plaintiff fails to state an actionable claim. This failure also applies to Plaintiff's claim of procedural due process violations. However, although the NOV is not a final agency action reviewable under the APA, "that does not foreclose the possibility that [Plaintiff] could raise [its] constitutional claims against the individual officers they complain of through a § 1983 suit." *Parsons v. United States Dep't of Justice*, 878 F.3d 162, 171 n.9 (6th Cir. 2017). Therefore, the Court dismisses Plaintiff's constitutional claims without prejudice.

## IV. CONCLUSION

Based on the forgoing analysis, the Court ORDERS that Defendants' Motion to Dismiss (Doc. # 14) is GRANTED. It is

FURTHER ORDERED that this case is DISMISSED WITHOUT PREJUDICE.

DATED: October 30, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge